UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JANICE M. DUSZAK,

    Plaintiff,

    - against-

THE BRIDGEPORT & PORT JEFFERSON
STEAMBOAT COMPANY,

    Defendant.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
21-CV-7063 (OEM) (ARL)

ORELIA E. MERCHANT, United States District Judge:

  Plaintiff Janice M. Duszak ("Plaintiff") commenced this tort action against Defendant The Bridgeport & Port Jefferson Steamboat Company ("Defendant" or "BPJSC"). Plaintiff alleges that she sustained personal injuries from an incident that occurred on a vessel owned, operated, managed, and maintained by BPJSC.

  Before the Court is Defendant's fully briefed motion for summary judgment.[1] For the reasons below, the Court concludes that genuine disputes of material facts preclude summary judgment for BPJSC. Therefore, Defendant's motion for summary judgment is DENIED.

---

[1] *See* Motion for Summary Judgment by The Bridgeport & Port Jefferson Steamboat Company, ECF 25 ("BPJSC's Mot."); Memorandum of Law in Support of BPJSC's Motion for Summary Judgment, ECF 26 ("BPJSC's Memo"); BPJSC's Rule 56.1 Statement, ECF 21-1 ("BPJSC's Rule 56.1"); Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, ECF 27 ("Pl.'s Memo"); Plaintiff's Rule 56.1 Statement Response & Counterstatement, ECF 22-1 ("Pl.'s Counter Rule 56.1"); Reply Memorandum of Law in Support of Defendant's Motion for Summary Judgment, ECF 28 ("BPJSC's Reply"). Defendant's 18-page reply does not comply with Rule III.F. of the Court's Individual Practices & Rules, which limits replies to 10 pages.

1

## BACKGROUND[2]

On January 7, 2021, Plaintiff's adult daughter, Joanne Hubbard ("Hubbard"), purchased a senior ferry ticket for Plaintiff and a ticket for herself over the phone.[3] Pl.'s Counter Rule 56.1 at Additional Statement ¶ 7. Later that day, the pair traveled to Port Jefferson, New York to take a passenger ferry owned and operated by Defendant. BPJSC's Rule 56.1 ¶¶ 2-3. Upon their arrival, Hubbard presented her and Plaintiff's tickets to BPJSC dock staff. *Id.* Hubbard testified that she did not recall any conversation with dock staff before boarding the ferry. Pl.'s Counter Rule 56.1 at Additional Statement ¶ 4. The parties agree that Plaintiff was seated in the front passenger seat of Hubbard's vehicle when Hubbard initially parked at the dock but dispute whether Plaintiff was in the vehicle when Hubbard drove onto the vessel. *Id.* ¶ 6. Plaintiff asserts that she walked onto the ferry with Hubbard after Hubbard drove onto the ferry. *Id.* at Additional Statement ¶ 10.

Plaintiff and Hubbard, who held Plaintiff's arm and carried her cane, *id.* at Additional Statement ¶ 11, walked to the elevator bank to ascend to the upper deck of the vessel where the passenger cabin was located. *See id.* at Additional Statement ¶ 12. Both Plaintiff and her mother had previously taken the BPJSC ferry and on those occasions, Plaintiff used the elevator to reach the passenger cabin. BPJSC's Rule 56.1 ¶ 8. On the day in question, passengers were not allowed to remain in their cars while the vessel was underway. Pl.'s Counter Rule 56.1 at Additional Statement ¶ 6. Instead, they had to go to the passenger cabin. *See id.*

Also on that day, the elevator was out of service and the stairs were the only point of access to the upper deck. BPJSC's Rule 56.1 ¶ 11. The elevator had yellow tape, a sign, and an orange

---

[2] All facts herein are undisputed unless otherwise noted. *See* BPJSC's Rule 56.1; Pl.'s Counter Rule 56.1. Defendant chose not to file a Reply Rule 56.1 statement to Plaintiff's Counter Rule 56.1 statement when it filed its reply brief. Accordingly, the Court treats the additional facts asserted in Plaintiff's Counter Rule 56.1 as undisputed for purposes of deciding this motion.

[3] Plaintiff's date of birth is April 25, 1932. BPJSC's Rule 56.1 ¶ 1.

cone in front of it indicating that it was out of service. *Id.* ¶ 25. The parties dispute whether the sign also directed passengers to ask for assistance. *Id.*; Pl.'s Counter Rule 56.1 ¶¶ 25, 30. Neither Plaintiff nor Hubbard requested assistance upon realizing the elevator was out of service. BPJSC's Rule 56.1 ¶¶ 7, 23; Pl.'s Counter Rule 56.1 ¶ 31. Instead, Plaintiff and Hubbard attempted to climb the stairs, in part because Plaintiff urgently needed to use the restroom. BPJSC's Rule 56.1 ¶¶ 11-12. While ascending the stairs, Plaintiff tripped and fell. *Id.* ¶¶ 13, 32. No prior complaints were made to BPJSC about any unsafe conditions on the ferry. *Id.* ¶ 33.

At the time of her fall, Plaintiff used a walker to move around unassisted, received help walking up and down stairs, and relied on a rollator walker to access her bathroom, kitchen, and bedroom. *Id.* ¶¶ 15-16. At all times while Plaintiff was aboard Defendant's ferry she was accompanied by her daughter, Hubbard. *Id.* ¶ 10.

The parties dispute various facts. For example, they agree that BPJSC's crew regularly assists ferry passengers with a variety of needs. *Id.* ¶ 34. However, the parties dispute whether Defendant's crew inquire with ferry passengers about their mobility needs only when "it is visually apparent that [the passenger] may need assistance as reflected by the use of [a] wheelchair, cane or other assistive device." *Id.* ¶ 36; Pl.'s Counter Rule 56.1 ¶ 36. The parties also dispute whether Defendant's employees physically see each passenger to ensure they have a ticket before coming aboard while also making a general assessment of the passenger's age and mobility needs. Pl.'s Counter Rule 56.1 at Additional Statement ¶ 2. The parties also dispute whether Defendant's dock employees had previously warned would-be-passengers when the elevator was out of order before boarding so the potential passengers could decide whether to wait for another vessel. *Id.* at Additional Statement ¶ 4. Plaintiff asserts that she had previously been advised by crew on prior trips on Defendant's ferry, "without any solicitation, that an elevator was available to assist her in

3

moving between decks of the vessel." *Id.* at Additional Statement ¶ 1. Plaintiff asserts when she took the ferry on prior occasions, crew members would assist Plaintiff into the elevator without her requesting assistance. *Id.* at Additional Statement ¶ 5.

Following the incident, the Coast Guard investigated and concluded that the "factors that contribute[d] to this casualty include: (1) a non-operational elevator, (2) falling on a stair while ascending a ladder well/staircase and, (3) passenger did not ask crewmembers for assistance." Ex. 1 to Plaintiff's Counter Rule 56.1 Statement, United States Coast Guard Incident Report, ECF 22-2 at 1.

Plaintiff has withdrawn various claims from her original complaint.[4] The remaining claims relate to the Defendant's failure to operate a functioning passenger elevator and failure to provide a warning regarding the lack of operational passenger elevator. *See* BPJSC'S Rule 56.1 ¶ 22; Pl.'s Counter Rule 56.1 ¶ 22.

## LEGAL STANDARDS

### A. Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may grant a motion for summary judgment only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006).

---

[4] Plaintiff alleges that Defendant was negligent for: (1) failing to "have an operating elevator for passengers"; (2) failing to "warn or otherwise advise passengers . . . that there was not an operable elevator on board, despite the fact that they knew, or in ordinary care reasonably should have known, that the absence of an operable elevator posed an unreasonable risk of harm to certain passengers, including the plaintiff"; (3) failing to "keep and maintain the stairway in a reasonably safe condition for use by passengers on board the vessel"; (4) allowing "the stairway, and particularly the stair on which the plaintiff fell, to be and remain in a dangerous and defective condition"; (5) causing "the stairway plaintiff fell [on] to be and remain in a dangerous and defective condition"; (6) failing "to provide adequate lighting in the stairway, although the defendant knew, or in the exercise of ordinary care out [sic] to have known, of such inadequate lighting"; and (7) failing "to warn the plaintiff of the dangerous and defective condition of the stairway[.]" *See* Complaint ("Compl."), ECF 1 ¶ 17.

The moving party bears the burden of showing that they are entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where, as here, the burden of persuasion at trial would be on the non-moving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the non-moving party's claim, or (2) by demonstrating that the non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." *Farid v. Smith*, 850 F.2d 917, 924 (2d Cir. 1988) (citing *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)). Therefore, "if 'there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment.'" *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)) (alteration in original).

If the moving party meets its burden of demonstrating the absence of a disputed issue of material fact, then the burden shifts to the nonmoving party to present "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e); *Sheet Metal Workers' Nat'l Pension Fund v. Accra Sheetmetal, LLC*, 993 F. Supp. 2d 245, 248 (E.D.N.Y. 2014). In showing a genuine issue for trial, the nonmoving party cannot rely solely on "conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). If the evidence favoring the nonmoving party

5

is "merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

### B. Admiralty Jurisdiction

The federal judicial power extends "to all Cases of admiralty and maritime Jurisdiction." U.S. Const. art. III, § 2, cl. 1. Congress codified that jurisdiction in 28 U.S.C. § 1333(1), which gives federal district courts original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1).

To invoke jurisdiction under § 1333(1) over a tort claim, the claim "must satisfy conditions both of location and of connection with maritime activity." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 247 (2d Cir. 2014) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995)). The location test is satisfied if "the tort occurred on navigable water" or an "injury suffered on land was caused by a vessel on navigable water." *Tandon*, 752 F.3d at 247 (quoting *Grubart*, 513 U.S. at 534). The activity giving rise to the injury must have a substantial relationship to traditional maritime activity, such that the incident had a potentially disruptive influence on maritime commerce. *Grubart*, 513 U.S. at 534. Courts have held that a tort claim stemming from an incident on a recreational vessel[5] has a potentially disruptive influence on maritime commerce and thus the claim has a substantial relationship to

---

[5] Although the parties do not assert that the ferry is a "recreational" vessel, the commercial or recreational character of a specific vessel is not in and of itself dispositive on the question of federal admiralty and maritime jurisdiction over tort claims; so long as the *Grubart* connection is satisfied by showing that the alleged tort could potentially disrupt commercial maritime activity, and that it is substantially connected to traditional maritime activities, that is enough. *See Grubart*, 513 U.S. at 534; *see also Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 674-75 (1982) ("The federal interest in protecting maritime commerce cannot be adequately served if admiralty jurisdiction is restricted to those individuals actually engaged in commercial maritime activity. This interest can be fully vindicated only if all operators of vessels on navigable waters are subject to uniform rules of conduct."). Additionally, "[c]ourts have typically found accidents involving ferry transport to qualify as traditional maritime activity with such potential effects [on commerce]." *Ocello v. City of New York*, 05-CV-3725 (SLT) (JO), 2012 WL 4511262, at *5 (E.D.N.Y. Sept. 28, 2012) (collecting cases).

traditional maritime activity. *See Burke v. Quick Lift, Inc.*, 464 F. Supp. 2d 150, 155-56 (E.D.N.Y. 2006) (finding that a case involving maritime and derivative tort claims arising out of the failure of a device installed on a recreational boat, which caused injury while docked in navigable waters "satisfie[d] the necessary conditions for exercising admiralty jurisdiction"); *see also In re Germain*, 824 F.3d 258, 270-74 (2d Cir. 2016) (finding incident involving injured recreational boat passenger subject to admiralty jurisdiction).

## DISCUSSION

Defendant argues the following in support of its summary judgment motion: (1) Defendant gave an adequate warning regarding the elevator; (2) Defendant did not breach its duty of care to Plaintiff, and (3) Plaintiff's incident was not causally related to any of Defendant's alleged acts or omissions.

### A. Common Law Negligence Principles Apply

Maritime law negligence claims, such as this one,[6] rely on the same elements as common law negligence claims. *See In re Kinsman Transit Co.*, 338 F.2d 708, 721 (2d Cir. 1964). Under New York law, a negligence claimant must therefore establish the existence of a legal duty, breach, causation, and damages. *See In re Felgate*, 18-CV-910 (VLB), 2020 WL 1542372, at *10 (D. Conn. Mar. 30, 2020); *In re Treanor*, 144 F. Supp. 3d 381, 388-89 (E.D.N.Y. 2015); *see also Di Benedetto v. Pan Am World Serv., Inc.*, 359 F.3d 627, 630 (2d Cir. 2004).

---

[6] Because Plaintiff's claims stem from an incident on a vessel that could have potentially disrupted maritime commerce, in navigable waters, admiralty jurisdiction applies. "[F]ederal maritime law incorporates common law negligence principles generally, and New York law in particular." *See Becker v. Poling Transp. Corp.*, 356 F.3d 381, 388 (2d Cir. 2004) (citing *Int'l Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1284 (2d Cir. 1994)); *Vasquez v. GMD Shipyard Corp.*, 582 F.3d 293, 301 n.3 (2d Cir. 2009).

7

**B. BPJSC's Duty to Plaintiff**

Plaintiff asserts that "in light of [her] age, apparent disability, and/or the defendant's usual practices, a jury reasonably could, and would, determine that the duty of reasonable care required the defendant to advise the plaintiff, prior to boarding the defendant's vessel, that there was no operable elevator on board." Pl.'s Memo at 1. Further, she contends that it "was [] foreseeable that a person such as the plaintiff, upon realization of the fact that the elevator is inoperable while already on board, would not readily be able to disembark from the vessel, as there was a large volume of automobile traffic coming on board" and therefore, Defendant "knew, or should have known, by not informing the plaintiff that the elevator was not working, that [Plaintiff] would need to take the stairs." *Id.* at 6-7. Plaintiff asserts that her "purchase of a senior citizen fare, the fact that she was 88-years-old, and [the fact that she] had a cane on her person, rendered it foreseeable to the defendant, that when forced to take the stairs, there was a . . . chance that the plaintiff would fall. Moreover, the plaintiff's age also made it foreseeable that such a fall would result in a grave injury." *Id.* at 11 (citations omitted).

A shipowner owes a duty to exercise reasonable care toward those lawfully aboard their vessel who are not members of the crew. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959); *see also Monteleone v. Bahama Cruise Line, Inc.*, 838 F.2d 63, 64-65 (2d Cir. 1988) ("Although some older cases called for a higher degree of care aboard ship, it is now clear in this Circuit that the appropriate standard is one of reasonable care under the circumstances.") (citing *Rainey v. Paquet Cruises, Inc.*, 709 F.2d 169, 172 (2d Cir. 1983). However, the "shipowner is not an insurer of its passengers' safety." *Monteleone*, 838 F.2d at 65.

Both parties agree that BPJSC owed Plaintiff a duty to exercise reasonable care. *See* BPJSC's Memo at 9 ("BPJSC's conduct is thus measured against a standard of ordinary,

8

reasonable care."); *see also* Pl.'s Memo at 1 (referencing BPJSC's "duty of reasonable care to the plaintiff"). However, they disagree about the scope of that duty. *See* Pl.'s Memo at 5-7 (Plaintiff explaining that because the harm she experienced was foreseeable Defendant owed Plaintiff a duty to protect her from that harm); BPJSC's Reply at 1 ("Plaintiff seeks to . . . expand the Defendant's duty.").

"The . . . scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the courts." *Sanchez v. State of New York*, 99 N.Y.2d 247, 252 (2002) (internal citation omitted). The scope turns and "depends on the [defendant's] relationship to . . . plaintiffs, whether plaintiffs were within a zone of foreseeable harm, and whether the harm was within the class of reasonably foreseeable hazards that the duty exists to prevent." *Vrazel v. Long Island R.R. Co.*, 14-CV-6209 (ADS) (ARL), 2016 WL 6603998, at *5 (E.D.N.Y. Nov. 8, 2016) (quoting *In re September 11 Litig.*, 280 F. Supp. 2d 279, 295 (S.D.N.Y. 2003). The scope of a duty is "'limited to risks of harm that are reasonably foreseeable.' Foreseeability is defined by actual or constructive notice [of the particular risk of harm]." *Qin Chen v. United States*, 494 F. App'x 108, 109 (2d Cir. 2012) (quoting *Sanchez*, 99 N.Y.2d at 253); *Pulka v. Edelman*, 40 N.Y.2d 781, 785-86 (1976) ("When a duty exists, nonliability in a particular case may be justified on the basis that an injury is not foreseeable."). To prove negligence, a maritime claimant must show that the shipowner had actual or constructive notice of the dangerous condition. *In re Treanor*, 144 F. Supp. 3d at 389 (citing *Monteleone*, 838 F.2d at 65).

Further, foreseeability means that "the risk of injury as a result of [the] defendant's conduct must not be merely possible, it must be natural or probable." *Pinero v. Rite Aid of N.Y., Inc.*, 743 N.Y.S.2d 21, 22 (App. Div. 1st Dep't), *aff'd*, 99 N.Y.2d 541 (2002). That is, "although virtually every untoward consequence can theoretically be foreseen . . . the law draws a line between remote

9

possibilities and those that are reasonably foreseeable because [n]o person can be expected to guard against harm from events which are . . . so unlikely to occur that the risk . . . would commonly be disregarded. *Di Ponzio v. Riordan*, 89 N.Y.2d 578, 583 (1997) (internal citation omitted). A plaintiff must show that a harm was reasonably foreseeable but they "need not demonstrate . . . that the precise manner in which the accident happened, or the extent of the injuries [was foreseeable]." *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980).

Here, construing the facts in favor of Plaintiff as the non-moving party, the Court concludes that Plaintiff's injury was foreseeable. BPJSC was aware of the broken elevator and advised passengers that they could not remain on the loading deck or in their cars. Thus, BPJSC was aware that passengers who usually used the elevator would be forced to take the stairs. That a passenger may have a condition that makes them more susceptible to injuring themselves on stairs, instead of on an elevator, is foreseeable.

Moreover, the "injured person's reasonable expectation of the care owed and the basis for the expectation" is key to the Court's analysis. *Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 178 (2d Cir. 2013) (quoting *Palka v. Servicemaster Mgmt. Servs. Corp.*, 83 N.Y.2d 579, 585 (1994)). Plaintiff asserts facts that establish her expectation of care: On prior occasions when she took the ferry, crew members assisted Plaintiff onto the elevator without her asking for help. Pl.'s Counter Rule 56.1 at Additional Statement ¶ 5. Moreover, Plaintiff asserts that she was advised by Defendant's crew on prior trips "without any solicitation, [and] that an elevator was [always] available to assist her in moving between decks of the vessel." *Id.*¶ 1. Based on these assertions, Plaintiff contends that she reasonably expected the elevator to function and reasonably expected that if it did not function, a sign or person would have alerted her before or during boarding. Plaintiff further asserts that it was foreseeable that by failing to advise a passenger that

10

the elevator was inoperable before boarding, that a passenger may injure themselves on the stairs, when such passenger could otherwise safely use an elevator.

### C. Breach

A breach of duty occurs when an owner fails to take reasonable measures to prevent foreseeable injury. *See Treanor*, 144 F. Supp. 3d at 389 ("Under well-established principles of Second Circuit maritime negligence law, an owner breaches his or her legal duty of reasonable care by failing to take simple precautions to prevent foreseeable and serious injury.") (citing *United States v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947)); *Syverson v. Consol. Rail Corp.*, 19 F.3d 824, 826 (2d Cir. 1994) ("Reasonable care is determined in light of whether or not a particular danger was foreseeable."). For the reasons below, the Court concludes that the issue of breach in this case is for the trier of fact.

Plaintiff's remaining liability allegations against BPJSC relate to the inoperable passenger elevator and the alleged failure to provide a warning regarding the same. *See* Compl. ¶17(a) - (b); BPJSC's Memo at 4.

#### 1. Operation of Commercial Passenger Vessel Without a Functioning Passenger Elevator

In her opposition, Plaintiff does not argue that Defendant's failure to operate a functioning passenger elevator constitutes a breach of duty. *See generally* Pl.'s Memo. Accordingly, Plaintiff has waived this argument[7] and her sole remaining claim is whether BPJSC's failure to warn

---

[7] *See Busher v. Barry*, 20-CV-3587, 2021 WL 5071871, at *3 (2d Cir. Nov. 2, 2021) (citing *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004)) ("Because the plaintiff[] failed to 'raise this argument in [her] opposition to summary judgment,' the 'argument has been waived.'"). Plaintiff's waiver of this argument is underscored by Plaintiff's admission that: "The *sole* issue addressed by the present motion is whether a jury could find the defendant's failure to advise the plaintiff that there was no available elevator prior to her boarding the Grand Republic was a breach of the defendant's duty of reasonable care." Pl.'s Memo at 5 (emphasis added).

11

Plaintiff about the inoperable elevator, before she boarded the ferry, renders BPJSC liable for Plaintiff's injuries.

### 2. Defendant's Failure to Warn Plaintiff about the Elevator Before She Boarded the Ferry

Where the duty of reasonable care is well-established, New York courts avoid conducting fact-specific analyses of an alleged breach. *See Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467-69 (2d Cir. 1995). Rather, after finding that the duty is triggered, courts leave this determination to the jury. *Borley v. United States*, 22 F.4th 75, 79 (2d Cir. 2021).

> It [is] particularly appropriate to leave [a finding of breach] to the jury, not only because of the idiosyncratic nature of most tort cases, or because there was room for a difference in view as to whether [the defendant's] conduct in the particular circumstances of this case did or did not evidence a lack of due care, but, perhaps above all, because in the determination of issues revolving about the reasonableness of conduct, the values inherent in the jury system are rightfully believed an important instrument in the adjudicative process.

*Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 118-19 (2d Cir. 2006) (citations omitted).

Plaintiff has adduced sufficient evidence to survive summary judgment on her failure to warn negligence claim. Plaintiff presented evidence that Defendant was aware that at least one senior citizen intended to board the ferry and that at least some of Defendant's employees thought that Defendant's practice was to alert passengers, who might have physical difficulty climbing stairs, that the elevator was down. *See* Pl.'s Memo at 7 ("The plaintiff's purchase of a senior citizen fare . . . rendered it foreseeable to the defendant, that when forced to take the stairs, there was an unreasonable [sic] chance that the plaintiff would fall."); *id.* at 7-10 ("By their admissions, prior to boarding, the defendant normally advises passengers like the plaintiff when the elevator is out of operation."). Disputes of fact regarding BPJSC's warning practices,[8] Defendant's awareness of

---

[8] According to Defendant, "Plaintiff mischaracterizes the Defendant's 'usual practices' by selectively citing to the deposition testimony of only one of the Defendant's employees to create the false premise that Defendant's own policy directed that a warning be given to the Plaintiff prior to her boarding the Defendant's vessel. This is simply not the

12

Plaintiff's age, and Plaintiff's contention that she may never have boarded the ferry had she been warned, are material to determining whether Defendant breached its duty of care.

### D. Causation

Construing the facts in favor of the non-moving party, material disputes of fact also persist regarding causation.

As an initial matter, Defendant's employees appear to concede that the inoperable elevator was at least one cause of Plaintiff's fall: Lead Able Bodie Seaman Robert Decaminada, Ordinary Seaman Patrick Dugre, and Captain Mark Soderstrom all agreed with the U.S. Coast Guard conclusion that the lack of an operable elevator was one of several causes of Plaintiff's fall. Exhibit G to 56.1 Defendant's 56.1 Statement, Decaminada Deposition, ECF 21-8 at 44:12-45:3; Exhibit E to Defendant's 56.1 Statement, Dugre Deposition, ECF 21-6 at 30:7-13; Exhibit D to Defendant's 56.1 Statement, Soderstrom Deposition, ECF 21-5 at 31:16-32:18.

The parties dispute whether Plaintiff would have still boarded the ferry had she known the elevator was not functioning. A reasonable trier of fact could find that Plaintiff's lack of advance warning and lack of assistance, from the elevator up the stairs, proximately caused Plaintiff's fall. A claimant need not establish that an owner's negligence was the sole cause of the injury. *In re Treanor*, 144 F. Supp. 3d at 389 (citing *United States v. Reliable Transfer Co.*, 421 U.S. 397, 411

---

case." BPJSC's Reply at 2. Plaintiff cites to deposition testimony that indicates that Defendant's employees may have routinely advised passengers that the elevator was down. Exhibit I to Defendant's Rule 56.1 Statement, Caffrey Deposition, ECF 21-9 at 10:13-11:5; Exhibit J to Defendant's Rule 56.1 Statement, Cipollina Deposition, ECF 21-11 at 15:2-16:24.

Additionally, the deposition of Patrick Dugre supports Plaintiff's suggestion that Defendants had a practice of advising people regarding the elevator: "When the elevator was out of service, they were told on the dock to let anybody know that had required handicap service that the elevator was out." When asked "if they saw someone who obviously needed handicap service because they were in a wheelchair or for some other reason it was readily apparent, they were instructed to let that person know that the elevator was out of order?" Dugre responded "Yes." *See* Exhibit E to Defendant's Rule 56.1 Statement, Dugre Deposition, ECF 21-6 at 13:5-14. In short, both parties have cited to conflicting testimony that supports their respective positions—the hallmark of finding that a dispute of fact exists.

13

(1975)). Therefore, it is impossible for the Court to determine as a matter of law whether BPJSC's failure to warn Plaintiff, in advance of her seeing the elevator signage, caused her to fall down the stairs. Moreover, causation is a factual question for the trier of fact to resolve. *See, e.g.*, *Redd v. New York Div'n of Parole*, 678 F.3d 166, 178 (2d Cir. 2012) ("[i]ssues of causation . . . are questions of fact"). Consequently, the Court cannot grant summary judgment under these circumstances.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment is DENIED.

SO ORDERED BY.

Dated: February 26, 2025
Brooklyn, New York

/s/
ORELIA E. MERCHANT
United States District Judge